DACE F. TEAGUE v. JULIA DEAL ALEXANDER AND HUSBAND LEWIS ALEXANDER, VIRGINIA DEAL BRADFORD AND HUSBAND EARL BRADFORD; MARY WILLIE DEAL COLE AND HUSBAND JIM W. COLE; EMILY DEAL GIBBONS AND HUSBAND ROBERT A. GIBBONS; LINDSAY DEAL AND WIFE MRS. LINDSAY DEAL; WILLIAM M. DEAL AND WIFE MRS. WILLIAM M. DEAL; JOE M. DEAL AND WIFE MRS. JOE M. DEAL

No. 7724SC1011

(Filed 17 October 1978)

**1. Boundaries § 10.2; Quieting Title § 2.2— opinion testimony by surveyor**

In an action to quiet title, opinions or conclusions stated by a witness found by the court to be an expert in surveying were within his field of surveying and were properly admitted in evidence.

**2. Boundaries § 13; Quieting Title § 2.2— admissibility of survey map**

In an action to quiet title, the trial court properly admitted a survey map for the purpose of illustrating the testimony of a surveyor where the surveyor testified that he surveyed the tract shown on the map, that the map was based on his survey, and that the map correctly represented the survey lines and objects shown thereon marking the boundaries and corners.

**3. Judgments § 35.1— res judicata not applicable**

A prior action involving the sale of timber on the land in controversy was not *res judicata* in this action to quiet title to the land where there was no showing of identity of parties, subject matter and issues in the two actions.

APPEAL by defendants from *Walker (Ralph A.), Judge.* Judgment entered 15 July 1977 in Superior Court, CALDWELL County. Heard in the Court of Appeals 19 September 1978.

This is an action to quiet title and to recover damages for trespass in the cutting and removal of timber from a part of plaintiff's land by defendants.

The parties admitted that they took title from a common source, specifically R. Kittie Deal. Both claim superior title to the lands in dispute, consisting of about 23 acres located on the north side of Mill Creek. Plaintiff claims ownership by mesne conveyances having the same land description of a tract of land containing 173 acres formerly owned by R. Kittie Deal and conveyed by her to Rufus A. Deal, Jr., by deed dated 6 April 1948, and the description therein included the disputed 23 acres located on the north side of Mill Creek. This deed was filed for registration on 6 April 1948. By deed dated 20 March 1948, R. Kittie Deal conveyed a tract containing 30 acres to Fred M. Deal, located on the north side of Mill Creek. This deed was filed for registration on 3 January 1949. Defendants claim title to the disputed tract as heirs of Fred M. Deal.

Defendants also claimed title by adverse possession and pled *res judicata*, alleging that this action was barred by a prior action by plaintiff against defendants involving the same issues which was terminated by a directed verdict for defendants entered in July 1972.

The parties stipulated that damages amounted to the sum of $65.00.

At trial plaintiff introduced in evidence a deed to plaintiff and several mesne conveyances taking title back to R. Kittie Deal, including a deed from her to Rufus A. Deal, Jr., dated 6 April 1948, and filed for registration on the same date. The description in this deed and in the various deeds constituting plaintiff's chain of title was substantially identical, but the acreage specified in the deed from R. Kittie Deal to Rufus A. Deal, Jr., as aforesaid, was 137 acres, and in the other deeds in the chain of title was 173 acres. The description included the disputed area, about 23 acres, located on the north side of Mill Creek.

Plaintiff also introduced in evidence a deed from R. Kittie Deal to Fred M. Deal dated 20 March 1948, for a tract containing 30 acres. It appears that this tract is the disputed tract located on the north side of Mill Creek. It is noted that the deed from R. Kittie Deal to Rufus A. Deal, Jr., was dated some 17 days after the deed to Fred M. Deal but was filed for registration prior to the registration of the deed to Fred M. Deal. Fred M. Deal is defendants' predecessor in title.

Plaintiff's evidence included the testimony of John Vaughn, a registered land surveyor found by the court to be an expert in his field, and his testimony tended to show that the descriptions in the various deeds in plaintiff's chain of title were substantially the same, that he surveyed the lands so described and made a map, which was received in evidence, and that plaintiff's tract included the 23-acre disputed area located north of Mill Creek, overlapping the 30-acre tract described in the deed from R. Kittie Deal to Fred M. Deal, claimed by defendants. Vaughn testified that he ran each line of the 173-acre tract described in the deed to plaintiff and described what he found at various corners.

Plaintiff's evidence also tended to show that plaintiff and his predecessors in title had farmed and cut trees on the disputed tract, that defendants and their predecessors in title had not claimed the disputed tract and done nothing to indicate adverse possession until the recent cutting of timber.

The evidence for the defendants tended to show that they or their predecessors in title had cut and removed timber from the disputed tract at least four times since 1966, that they had claimed the land since the deed was made from R. Kittie Deal to Fred M. Deal in 1948 and had listed it for taxation since 1953.

Issues submitted to and answered by the jury were as follows:

"1. Is the Plaintiff the owner of the land as shown in the survey, Plaintiff's Exhibit #9?

ANSWER: Yes.

2. Was the possession of the property by the defendants of such a character and of sufficient duration as to vest title to the property in the defendants?

ANSWER: No."

From judgment entered on the verdict defendants appeal.

*Sigmon, Clark, and Mackie by E. Fielding Clark II for plaintiff appellee.*

*Wilson and Palmer by Bruce L. Cannon for defendant appellants.*

CLARK, Judge.

[1] The defendants group 139 exceptions and assignments of error to the admission of testimony by plaintiff's witness, John Vaughn, a surveyor, in their first argument, contending that the surveyor was permitted to state his opinions and conclusions. We have examined all of the exceptions and find them to be without merit. On direct examination surveyor Vaughn, found by the court to be an expert in his field, described each line and corner of his survey made from the description of the 173-acre tract in the deed to the plaintiff. He testified that some of the tree marks and corner monuments he found were old, that at the end of some lines surveyed he found "no established corner," and he fully described the trees, stumps, and monuments at the end of other lines.

For many years in North Carolina surveyors have been recognized, when qualified, as expert witnesses who can give opinion testimony. *See West v. Shaw*, 67 N.C. 483 (1872). A surveyor may express his opinion of the age of tree marks. *West v. Shaw, supra; Dugger v. McKesson*, 100 N.C. 1, 6 S.E. 746 (1888). We find that any opinion or conclusion stated by the witness was within his field of surveying and was properly admitted.

[2]   Nor do we find merit in defendants' argument that the court erred in admitting in evidence the survey map of the 173-acre tract described in the deed to plaintiff. Vaughn was a licensed surveyor. He testified that he surveyed the tract, that the map was based on his survey, that the map correctly represented the survey lines and the objects shown thereon marking the boundaries and corners. The trial court did not err in admitting the map for the purpose of illustrating the testimony of surveyor Vaughn.

[3]   Defendants pled in bar an action instituted in 1971 by plaintiff against Mamie L. Deal and Lewis Alexander in which it was alleged that Alexander handled the sale of about 73 trees on plaintiff's land to a sawmill operator. The land was not described in the complaint. Defendants filed an answer denying the allegations in the complaint and alleging that Mamie L. Deal owned the lands on which the trees were cut. Soon thereafter Mrs. Deal died, and Virginia Deal Bradford and Julia Deal Alexander were substituted for deceased as parties defendant in that they were administrators of the Estate of Mamie L. Deal. The transcript of the trial, held in July 1972, reveals that plaintiff was unable to locate the boundaries of the 173-acre tract described in his deed. It appeared from cross-examination of plaintiff's witnesses that Mamie L. Deal, deceased, and her heirs claimed title by adverse possession to the 30-acre tract, which the defendants in the case *sub judice* now claim. There was no evidence of the location of the boundaries to the 30-acre tract. At the close of plaintiff's evidence defendants moved for directed verdict and judgment declaring them the owners of the land where the timber was cut. The trial judge stated: "I am going to ALLOW the motion as to the lines and boundaries pertaining to plaintiff's complaint as for damages because of no maps, plats, or surveys from which the Court or the Jury could determine any issues which the damage for wrongful cutting of timber would raise. As to the twenty years adverse of seven years color, motion is DENIED." Judgment was never entered.

The transcript of the 1972 trial reveals that counsel for plaintiff (not counsel for plaintiff in the action before us) during trial stated: "I think we're trying a boundary line or land lawsuit without the proper credentials." We agree. The lands claimed by plaintiffs were not described in the pleadings, nor did plaintiff of-

fer evidence of location at trial. The three parties defendant were parties to the action but not as owners of the 30-acre tract; Alexander was the agent in selling the timber, and Bradford and Alexander were administrators of the Estate of Mamie L. Deal, deceased.

The doctrines of *res judicata* and collateral estoppel are recognized in North Carolina. *King v. Grindstaff,* 284 N.C. 348, 200 S.E. 2d 799 (1973); *Crosland-Cullen Co. v. Crosland,* 249 N.C. 167, 105 S.E. 2d 655 (1958); *Gillispie v. Bottling Co.,* 17 N.C. App. 545, 195 S.E. 2d 45, *cert. denied* 283 N.C. 393, 196 S.E. 2d 275 (1973).

Generally, for the judgment in a former action to be held to constitute an estoppel as *res judicata* in a subsequent action there must be identity of parties, of subject matter and of issues. *Light Co. v. Insurance Co.,* 238 N.C. 679, 79 S.E. 2d 167 (1953). It is clear the defendants have failed to show that the 1971-1972 action and the case *sub judice* have an identity of parties, of subject matter, and of issues. Thus, the trial court did not err in denying this plea.

We have carefully examined defendants' remaining assignments of error and find them to be without merit. After a lengthy trial the jury answered the issues in favor of the plaintiff. We find no error that requires a new trial.

No error.

Chief Judge BROCK and Judge MARTIN (Harry C.) concur.